IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| **KIRAN KUMAR CHANDRA SHEKAR**, on behalf of himself and all others similarly situation, <br><br> *Plaintiff*, <br><br> v. <br><br> **ACCURATE BACKGROUND, INC.**, successor in interest to HIREASE INC., <br><br> *Defendant*. | **2:17-cv-00585** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## I. PRELIMINARY STATEMENT

1. This is a consumer class action based upon Defendant's violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). Plaintiff brings this action on behalf of thousands of employment applicants throughout the country who have been the subject of background reports performed by the Defendant Accurate Background, Inc. and its predecessor entities including Hirease, Inc. (collectively "ABI") and sold to employers and prospective employers. Defendant ABI has adopted and maintained a practice of failing to obtain and report complete and up to date public record information. The prejudice caused by the reporting of adverse public record information that is not complete or up to date is exacerbated by Defendant's failure to notify the consumer contemporaneously of the fact that the erroneous adverse information is being sent to an employer or prospective employer. As a result, consumers who are entitled to receive copies of their credit files from Defendant pursuant to section 1681k of the FCRA are deprived of full, proper and timely disclosures, and are unable to adequately verify and/or dispute the information that Defendant sells to employers and prospective employers. Defendant's practice harms consumers seeking employment by

prejudicing their prospective employers with incomplete and misleading adverse information, harming interstate commerce. This practice is exactly the type of behavior the FCRA was enacted to prevent. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b).

2. Plaintiff also brings a claim for Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of the consumer reports its sells, as required under section 1681e(b) of the FCRA.

## II. JURISDICTION & VENUE

3. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

5. Plaintiff Kiran Kumar Chandra Shekar is an adult individual who at all pertinent times resided and sought employment within the State of Wisconsin.

6. Defendant ABI regularly conducts business nationwide and in this District, and has a principal place of business at 7515 Irvine Center Drive, Irvine, California 92618.

7. Accurate Background, Inc. acquired Hirease Inc. on or about November 13, 2014.

## IV. FACTUAL ALLEGATIONS

**A. Defendant's Practices as a Consumer Reporting Agency and Furnisher of Consumer Reports for Employment Purposes**

8. At all times pertinent hereto, ABI was a consumer reporting agency ("CRA") as defined by section 1681a(f) of the FCRA.

2

9. At all times pertinent hereto, Plaintiff was a "consumer" as defined by section 1681a(c) of the FCRA.

10. Among other things, the FCRA regulates the collection, assembly, maintenance, and disclosure of consumer reports by CRAs, including public record information.

11. Pursuant to its established policies and procedures, ABI reviews public record databases and obtains bulk data obtained from third-party vendors concerning public records and assembles and/or maintains consumer files which contain information concerning, among other things, the alleged criminal history of consumers.

12. ABI engages in this conduct because the acquisition of bulk data, despite the prevalence of inaccurate information contained therein, is significantly cheaper than the acquisition of accurate information from the actual review of physical court files.

13. Pursuant to its established policies and procedures, ABI does not contact court clerks or review actual court files to verify the accuracy of information in its consumer files prior to issuing a report about the alleged criminal history of a consumer.

14. Pursuant to its established policies and procedures, ABI does not perform any independent review of the bulk criminal history data it acquires and relies exclusively upon consumer disputes to identify inaccuracies in its consumer files with respect to the alleged criminal histories of those consumers.

15. Pursuant to its established policies and procedures, ABI sells consumer reports prepared from the information contained in its consumer files to potential employers wishing to review the criminal history, or lack thereof, of various job applicants.

16. When a CRA furnishes a consumer report for employment purposes, and compiles and reports items of information on consumers which are matters of public record and

3

are likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA has two options. It must either (1) notify the consumer of the fact that adverse public record information is being reported by the CRA *at the time* the public record information is reported to the user of the consumer report, together with the name and address of the person to whom such information is being reported, 15 U.S.C. § 1681k(a)(1), or (2) maintain strict procedures designed to insure that whenever public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is reported, that information is complete and up-to-date. 15 U.S.C. § 1681k(a)(2).

17. CRAs have been on notice of this issue for the past fifteen years, as the U.S. Court of Appeal for the Fourth Circuit highlighted a CRA's duties under section 1681k:

> When a consumer reporting agency furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to do one of two things: (1) notify the consumer contemporaneously with the transmission of the report to the user or (2) "maintain strict procedures" designed to ensure the information is "complete and up to date."

*Dalton v. Capital Assoc. Indus., Inc.,* 257 F.3d 409, 417 (4th Cir. 2001) (internal citations omitted).

18. Moreover, whenever CRAs prepare a report about a consumer, they are required to follow reasonable procedures to assure the maximum possible accuracy of the information they sell and to make sure that the information on a given report actually concerns the consumer about whom the report was prepared and not another person. *See* 15 U.S.C. § 1681e(b).

19. Despite these clear, well-established and unambiguous requirements of the FCRA, ABI's established policies and procedures, including its exclusive reliance upon bulk data obtained from vendors and other sources and its rare, if ever, contact with local court clerks, regularly results in its failure to obtain and report complete and up to date public record

4

information, its failure to obtain and report the true descriptions of criminal offenses and the misrepresentation of the nature and gravity of those offenses, and its failure to obtain the final dispositions of criminal cases.

20. Pursuant to its established policies and procedures that it has publicly acknowledged in other litigation, and notwithstanding its obligations under the FCRA, when ABI provides a consumer report to a prospective employer that contains matters of public record likely to have an adverse effect upon a consumer's ability to obtain employment, it does not contemporaneously notify the consumer that it has provided the report.

21. ABI's established policies and procedures disregard ABI's duties under the FCRA to either 1) send notice to consumers about whom it sells adverse public record information for employment purposes at the time that it sells that information or 2) maintain strict procedures to insure that its reporting is complete and up to date and its duty to maintain reasonable procedures to assure the maximum possible accuracy of its reports.

### B. The Facts Pertaining to Class Representative Kiran Kumar Chandra Shekar

22. In or around October 2015, Mr. Chandra Shekar applied for a position as a Senior Software Developer with Randstad Technologies, L.P., a division of Randstad Staffing USA (collectively Randstad) for a project with Randstad's Harland Clarke.

23. Randstad extended Mr. Chandra Shekar a contingent offer of employment on October 22, 2015, which he accepted.

24. The Senior Software Developer position was set to begin on November 16, 2015.

25. On October 30, 2015, Randstad sent Mr. Chandra Shekar an email communication directing him to give his two weeks' notice at his place of employment on November 2, 2015. Mr. Chandra Shekar gave notice as instructed.

26. On or about November 2, 2015, Defendant ABI delivered a background consumer report on Mr. Chandra Shekar to Randstad.

27. The report prepared by Defendant contained public record information that was neither complete nor up to date. The report stated that Mr. Chandra Shekar had been convicted of a misdemeanor count of disorderly conduct. This reporting was not accurate or up to date, because although he was originally charged with a misdemeanor offense, Mr. Chandra Shekar pled no contest to a non-criminal ordinance violation.

28. The complete, accurate and up-to-date public record of this count available from the Brown County, Wisconsin Clerk of Court makes clear that the original charge was amended to an ordinance violation and that the final disposition was a conviction of that ordinance violation, and not a misdemeanor.

29. For public records of offenses with a grade or "offense type" lower than misdemeanor, including but not limited to ordinance violations, summary offenses, and citations, Defendant ABI regularly fails to obtain that final disposition, as a result of its company-wide procedures. Defendant therefore does not obtain and report up-to-date records of offenses with a grade or "offense type" lower than misdemeanor.

30. In addition to being incomplete and not up-to-date, Defendant's report about Mr. Chandra Shekar was inaccurate, as its misrepresented Plaintiff's actual background.

31. Randstad withdrew the offer of employment to Mr. Chandra Shekar on the basis of the Defendant's incomplete, outdated, and inaccurate report.

32. After finding out from Randstad that ABI was involved in the production of the background report, Mr. Chandra Shekar contacted Defendant to dispute the incomplete, outdated and inaccurate conviction information listed on his report.

33. Defendant provided Mr. Chandra Shekar with the results of its reinvestigation of his dispute, which updated the disputed count to show that the "offense type" of the charge was an ordinance violation and not a misdemeanor. However, by the time Mr. Chandra Shekar sent these updated results to Randstad, Randstad informed him that the position with Harland Clarke had already been filled.

34. A CRA's duty under section 1681k to either send notice to consumers who are the subjects of employment-purpose consumer reports containing adverse public record information, or to maintain strict procedures to insure that such reports are complete and up to date is absolute and not dependent on whether a consumer knows of or disputes inaccurate adverse, or otherwise improperly disclosed information. The requirements of section 1681k are independent of a CRA's duty to reinvestigate consumer disputes under section 1681i. In other words, the FCRA neither requires consumers to dispute inaccurate adverse public record information upon learning that it has been reported about them nor does it allow a CRA to rely solely upon consumer disputes to insure the accuracy of its files.

35. Defendant's practices described herein affected not only the Plaintiff but also other applicants for employment who had adverse information that was reported by Defendant to employers and prospective employers. By failing to maintain strict procedures to ensure reporting of complete and up-to-date public record information, Defendant's practices directly conflict with the purposes of the FCRA and harm consumers.

36. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

37. At all times pertinent hereto, the conduct of the Defendant, as well as that of its

7

agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

> (a) All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of the Complaint in this matter and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included any adverse criminal or public record information (including any judgment of conviction, arrest, bankruptcy, civil judgment or tax lien.)
>
> (b) All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of the Complaint in this matter and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included an item of criminal record information identifying the final disposition as a conviction of misdemeanor or felony, when in fact the true final disposition listed on the public record was a conviction for an ordinance violation, summary offense, or other charge type lower than misdemeanor.
>
> (c) All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of the Complaint in this matter and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included an item

8

of criminal record information for which the description of the charges is different from the charges set forth in the public record.

39. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

40. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class members number in the hundreds or thousands. Defendant sells criminal record history information to thousands of businesses throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

41. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a) Whether Defendant violated section 1681k of the FCRA by failing to maintain strict procedures to assure that the information is complete and up to date;

(b) Whether Defendant violated section 1681e(b) of the FCRA by failing to maintain reasonable procedures to assure the maximum possible accuracy of the reports it sells;

42. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claim for statutory and punitive damages that he seeks for absent class members.

9

43. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes. His interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

44. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members individually themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. § 1681k
### (Class Claim)

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as

alleged above.

46. Defendant is a "person" and "consumer reporting agency" as defined by sections 1681a(b) and (f) of the FCRA.

47. Plaintiff is a "consumer" as defined by section 1681a(c) of the FCRA.

48. The above-mentioned background reports are "consumer reports" as defined by section 1681a(d).

49. Pursuant to sections 1681n & 1681o of the FCRA, Defendant is liable for violating FCRA section 1681k by engaging in the following conduct:

50. Failing to notify consumers contemporaneously of the fact that adverse public and criminal record information is being provided to employers or prospective employers; and

51. Failing to maintain strict and reasonable procedures to ensure that the adverse information being reported is complete and up to date.

52. Defendant had substantial guidance from the plain language of the FCRA, statements from regulatory agencies, and previous court decisions by which to know that its conduct did not comply with the FCRA.

## COUNT II
### Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)
### (Class Claim)

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

54. Defendant is a "person" and "consumer reporting agency" as defined by sections 1681a(b) and (f) of the FCRA.

55. Plaintiff is a "consumer" as defined by section 1681a(c) of the FCRA.

56. The above-mentioned background reports are "consumer reports" as defined by

section 1681a(d).

57. Pursuant to sections 1681n & 1681o of the FCRA, Defendant is liable for violating FCRA section 1681e(b) by failing to maintain reasonable procedures to assure the maximum possible accuracy of the reports it produces about consumers.

58. Defendant had substantial guidance from the plain language of the FCRA, statements from regulatory agencies and previous court decisions by which to know that its conduct did not comply with the FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory and punitive damages for Plaintiff and the Classes;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and

E. Such other relief as the Court deems just and proper.

DATE: April 25, 2017	Respectfully Submitted,

**SMITHMARCO, P.C.**

By:	*/s/ Larry P. Smith*

Attorney for Plaintiff
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
T: 312-324-3532
F: 888-418-1277
lsmith@smithmarco.com

**FRANCIS & MAILMAN, P.C.**
James A. Francis*
John Soumilas*
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
T: 215.735.8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
* Application for admission *pro hac vice*
forthcoming

Attorneys for Plaintiff

13